**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**MICHELLE LLANEZA,**

              **Plaintiff,**                          **Case No. 2:15-cv-2437**

                                         **Judge James L. Graham**

    **v.**                                    **Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF SOCIAL
SECURITY,**

              **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Michelle Llaneza, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for social security disability insurance benefits. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 14), the Commissioner's Memorandum in Opposition (ECF No. 19), Plaintiff's Reply (ECF No. 14), and the administrative record (ECF No. 20). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## I. BACKGROUND

Plaintiff filed her application for benefits on February, 17 2011, alleging that she has been disabled since June 1, 2006 due to depression, anxiety, post-traumatic stress disorder ("PTSD"), panic attacks, and attention deficit disorder ("ADD"). (R. at 51, 229-35, 289.) Plaintiff's application was denied initially and upon reconsideration. (R. at 112-117, 121-33.) Plaintiff sought a *de novo* hearing before an administrative law judge. Administrative Law Judge Charles J. Arnold held a hearing on October 23, 2012, at which Plaintiff, represented by

counsel, appeared and testified.  (R. at 759-766.)  A vocation expert did not appear or otherwise testify.  During the course of the hearing, the administrative law judge permitted Plaintiff to amend her onset date to January 1, 2010.  (R. at 765.)  On November 9, 2012, the administrative law judge issued a decision finding Plaintiff disabled under the Social Security Act.  (R. at 103.)

On January 8, 2013, the Appeals Council noticed their intent to conduct its "own motion review" of the administrative law judge's decision.  (R. at 185.)  On September 21, 2013, the Appeals Council issued its opinion finding that the administrative law judge' decisions was not supported by substantial evidence of record because (1) it included a finding of a severe impairment of PTSD, although "that diagnosis is not supported in the record"; (2) the decision did "not contain a function-by-function assessment of the claimant's work-related abilities"; (3) the decision relied on a treating source opinion that is "not substantially supported by evidence of record, including his own mental status examination findings"; (4) the decision found Plaintiff is "limited to less than sedentary work but did not identify any medically determinable physical impairment"; and, (5) determined that Plaintiff's date last insured was September 30, 2010, although she "continued to be insured for Title II benefits though at least March 30, 2012."  (R. at 107-108.)

The Appeals Council remanded the case back to another administrative law judge with the following instructions:

> Obtain additional evidence concerning the claimant's mental impairments in order to complete the administrative record.  The additional evidence shall include, if available, updated evidence from the claimant's treating sources.

> Obtain medical evidence from a medical expert, preferable a psychiatrist or psychologist, to clarify the nature, severity, and limiting effects of the claimant's impairments.

> Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue, complete a function-by-function

assessment of her work-related abilities, and provide rationale with specific references to evidence of record in support of the assessed medical source opinions . . . and explain the weight given to such opinion evidence.

Evaluate the claimant's subjective complaints and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms and Social Security Ruling 96-7p.

If warranted by the expanded record, obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base.

(R. at 108-109 (internal citations omitted)).

Administrative Law Judge Timothy G. Keller (the "ALJ") held a hearing on February 11, 2014, at which Plaintiff, represented by counsel, appeared and testified. (R. at 32-43.) Jerry Olsheski, a vocational expert, also appeared and testified at the hearing. On February 21, 2014, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 13-23.) On April 21, 2015, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-3.) Plaintiff then timely commenced the instant action.

## II. ADMINISTRATIVE HEARING TESTIMONY

### A. Plaintiff's October 23, 2012 Administrative Hearing Testimony

Plaintiff testified at her first hearing that she did some part-time work "doing hair" until approximately April 2011, but that she had to stop due to her anxiety. (R. at 760.) According to Plaintiff, "I would be so nervous all the time. And clients would leave my work. I would run in the back and cry or go to the bathroom because my stomach was upset." (R. at 760-761.) Plaintiff further testified that she had been in regular treatment at Buckeye Psychiatry with Dr. Adam Brandemihl. (R. at 761.) Plaintiff stated that Dr. Brandemihl "wants me to go to therapy but I wish I could afford it but I can't because of the places I've called to get help, they want a

lot of money, and I don't have that kind of money." (*Id.*)  Plaintiff testified that she has no medical insurance.  (*Id.*)

**B.  Plaintiff's February 11, 2014 Administrative Hearing Testimony**

Plaintiff testified that she has been married since 2011.  (R. at 37.)  Plaintiff further testified that she began working in 2001 but eventually had to cease full-time employment because "[her] anxiety was too extreme."  Plaintiff described her anxiety as follows

> I'd be sick to my stomach.  I'd have flashbacks and a lot of panic attacks and make people uncomfortable, you know, just I'd be very overwhelmed and I'd want to go home and I, I tried the best I could, but towards the end it just, it was overbearing, like I couldn't handle it and, you know, sometimes I'd cry at work and, I mean, I'd cry in the bathroom and do it, but I was always sick to my stomach and made myself sick and I had no control.

(R. at 34.)  Plaintiff testified that she felt nausea and had symptoms "like irritable bowel" daily. (*Id.*)  Plaintiff further testified that she occasionally has "bowel movement[s] I can't control" at unpredictable times.  (R. at 40.)  According to Plaintiff, she experienced these episodes during the work day.  (*Id.*)

Plaintiff testified that as a teenager she "was molested for seven years almost every day and I was also beaten."  (R. at 39.)  Plaintiff further testified that she isolates herself and has "flashbacks of what went on from, you know, what happened early in my lifetime, and it seems like as I got older it got out of control."  (R. at 35.)  Plaintiff stated that she either sleeps too little or too much and that "basically I'm like in a funk all day."  (*Id.*)  Plaintiff testified that she watches some television and occasionally cleans up after her dogs.  (*Id.*)  According to Plaintiff she does not have friends and does not like being around other people.  (R. at 36.)

Plaintiff testified that she tried to travel once to Las Vegas for five days, but "didn't feel good the whole time.  My anxiety was through the roof.  I threw up once.  I didn't want to come out of the room."  (*Id.*)  Plaintiff also testified that when she was dating her husband in 2008 that

their only dates were to stay at home, go to the drive-through at fast food restaurants, or go to the movies.  (R. at 38.)

Plaintiff testified that she only leaves her house to go to the doctor or the pharmacy.  (R. at 39.)  Plaintiff further testified that she only drives when she has to and that her mother brought her to the hearing.  (*Id.*)  According to Plaintiff, her mother helps her pay her medical expenses because she does not have insurance.  (*Id.*)

## C.  The Vocational Expert's February 11, 2014 Administrative Hearing Testimony

Vocational Expert Dr. Jerry Olsheski (the "VE") testified at the administrative hearing. He identified Plaintiff's past relevant work hair stylist, receptionist, and cashier.  (R. at 41.)  The ALJ asked the VE whether a hypothetical person with Plaintiff's age, education, work experience, and limitations that would eventually become the ALJ's residual functional capacity determination could perform any of Plaintiff's past work.  (*Id.*)   The VE responded that the hypothetical person could not, but he indicated that jobs exist in the local or national economies that the hypothetical person could perform.  (R. at 41-42.)  According to the VE, these jobs include hand packer; light, unskilled cleaner; and, light, unskilled mail clerk.  (R. at 42.)  The VE agreed that if Plaintiff were "unable to leave her home on a regular basis to attend employment . . . [t]hat would preclude all work."  (*Id.*)  The VE also testified that were Plaintiff "frequently unable" to interact with supervisors "I don't think she could maintain employment."  (*Id.*)

## III. MEDICAL RECORDS

## A.  Adam S. Brandemihl, M.D.

On January 24, 2010, Dr. Brandemihl conducted a psychiatric assessment of Plaintiff. (R. at 369.)  He noted that she displayed no symptoms of PTSD, but observed repetitive cleaning behaviors symptomatic of obsessive-compulsive disorder.  (*Id.*)  Dr. Brandemihl also observed

symptoms of anxiety and panic, including obsessional thoughts, panic attacks, frequent worrying, and thoughts of imminent death.  (*Id.*)  Dr. Brandemihl reported that Plaintiff was appropriately dressed and groomed, oriented as to name, place, time, and situation.  (R. at 373.) He noted that Plaintiff had a "constricted" affect and average insight, judgment, and impulse control.  (*Id.*)  During the assessment, Plaintiff reported the hobby of "dancing."

On March 7, 2010 Plaintiff again saw Dr. Brandemihl.  He noted that Plaintiffs medication "has helped" and that her "anxiety [is] not as bad."  (R. at 368.)  Dr. Brandemihl also recorded that Plaintiff reported crying spells and excessive sleeping.  (*Id.*)  He observed that Plaintiff was appropriately dressed and groomed.  (*Id.*)  Dr. Brandemihl found that Plaintiff exhibited a constricted and reactive affect, but found her insight fair, and her judgment and impulse control good."  (*Id.*)

On April 25, 2010 Dr. Brandemihl again saw Plaintiff, who reported having trouble with concentration and focus, although she also reported that a higher dose of her medication "has helped."  (R. at 367.)  Plaintiff also reported fatigue.  (*Id.*)

On July 23, 2010 Plaintiff saw Dr. Brandemihl again and reported that she was "sleeping fair" and had "some crying and dysphoria."  (R. at 366.)  Dr. Brandemihl did not conduct a mental status exam, but did adjust Plaintiff's prescriptions.  (*Id.*)

On January 23, 2011, Dr. Brandemihl examined Plaintiff, who reported that she wanted to get a job.  (R. at 364.)  Dr. Brandemihl observed that Plaintiff's insight was "fair," but he made no other observations about her mental status.  (*Id.*)

On April 5, 2011 Plaintiff saw Dr. Brandemihl, who noted her mood as "anxious" and her judgment and insight as "fair."  (R. at 363.)  He noted that Plaintiff reported being "stressed at new job" and "feels dysphoric and tearful."  (*Id.*)  Plaintiff also reported continued anxiety and

"not sleeping well." (*Id.*)  Dr. Brandemihl recommended therapy and adjusted Plaintiff's medications.  (*Id.*)

On June 5, 2011, Plaintiff again visited Dr. Brandemihl who observed that Plaintiff exhibited an "anxious" mood, but "fair" insight.  (R. at 413.)  Dr. Brandemihl did not make any other observations but encouraged Plaintiff to seek out therapy and continued Plaintiff on her medication.  (*Id.*)

On September 4, 2011, Dr. Brandemihl completed a Medical Assessment of Psychiatric Limitations.  (R. at 390.)  He found Plaintiff's ability to relate to co-workers, deal with the public, interact with supervisors, deal with work stress, and maintain attention and concentration to be "poor" and her ability to follow work rules, use judgment when dealing with the public, and function independently to be "fair."  (R. at 390-391.)  Dr. Brandemihl also found Plaintiff ability to understand, remember, and carry out complex job instructions to be "poor," but found her ability to understand, remember, and carry out simple and detailed, but not complex, job instructions to be "fair."  (R. at 391.)  He also found her ability to maintain personal appearance to be "good" and her ability to behave in an emotionally stable manner and to relate predictably in social situations to be "fair."  (R. at 391-392.)  He found her ability to demonstrate reliability to be "poor."  (R. at 392.)  Dr. Brandemihl diagnosed generalized anxiety disorder, severe panic attacks, compulsive behavior, and excessive worrying.  (*Id.*)  He assessed Plaintiff to have a current Global Assessment of Functioning ("GAF") score of 45.[1]  (*Id.*)  Dr. Brandemihl did not note any other medical or clinical findings that support his opinion.  (*Id.*)

---

[1] The GAF scale is used to report a clinician's judgment of an individual's overall level of functioning.  Clinicians select a specific GAF score within the ten-point range by evaluating whether the individual is functioning at the higher or lower end of the range.  A GAF score between 41 and 50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or a serious impairment in social, occupational, or school functioning (e.g.,

On December 4, 2011, Plaintiff saw Dr. Brandemihl and reported that she recently married and visited Las Vegas.  (R. at 411.)  Plaintiff also reported anxiety and dysphoria, but Dr. Brandemihl did not conduct a mental status exam.  (*Id.*)  Dr. Brandemihl continued Plaintiff on her medication.  (*Id.*)

On March 4, 2012, Plaintiff again visited Dr. Brandemihl, but he did not conduct a mental status exam.  (R. at 410.)  Dr. Brandemihl continued Plaintiff's medication and told Plaintiff that she needs therapy.  (*Id.*)

On June 3, 2012, Dr. Brandemihl again saw Plaintiff, but he did not conduct a mental status exam.  (R. at 409.)  He reiterated the need for Plaintiff to seek out therapy and continued her prescriptions.  (*Id.*)

On September 2, 2013, Dr. Brandemihl saw Plaintiff, who reported having nightmares and interrupted sleep, although she also reported "doing ok."  (R. at 731.)  Dr. Brandemihl observed that Plaintiff exhibited an anxious mood, but fair insight.  (*Id.*)  He made no other observations regarding Plaintiff's mental status, but continued Plaintiff's medication and recommended therapy.  (*Id.*)

On December 23, 2012, Plaintiff again visited Dr. Brandemihl.  He did not conduct a mental status exam, but continued Plaintiff on her medication and encouraged her to seek out therapy.  (R. at 730.)

On January 21, 2013, Dr. Brandemihl wrote a letter summarizing Plaintiff's treatment relationship since January 2010.  (R. at 522.)  Dr. Brandemihl stated that he met with Plaintiff "approximately every three months to discuss the management of her medications."  (*Id.*)  He also noted diagnoses for panic disorder, generalized anxiety disorder, and obsessive compulsive

---

no friends, unable to keep a job).  *See* American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 33-34.

disorder.  (*Id*.)  Dr. Brandemihl also stated that "[d]ue to time constraints and my office practices/habit, my treatment notes do not reflect every single observation I make of [Plaintiff], every interaction with her, or even every opinion that I have about her level of functioning." (*Id*.)  He concluded that his opinion of Plaintiff's functional limitations remained unchanged from his September 4, 2011 Medical Assessment of Psychiatric Limitations.  (*Id*.)

On April 7, 2013, Plaintiff again saw Dr. Brandemihl and was "tearful at times."  (R. at 729.)  Dr. Brandemihl did not conduct a mental status exam, but he continued Plaintiff's medication and encouraged her to seek therapy.  (*Id*.)

On August 18, 2013, Dr. Brandemihl saw Plaintiff.  He did not conduct a mental status exam, but he continued Plaintiff on her medications and urged her to seek therapy.  (R. at 728.)

On November 10, 2013, Plaintiff again visited Dr. Brandemihl and reported "flashbacks about past abuse" and anxiety.  (R. at 727.)  Dr. Brandemihl did not conduct a mental status exam, but he continued Plaintiff's medication and encouraged her to seek therapy.  (*Id*.)

On January 31, 2014, Dr. Brandemihl wrote a letter again summarizing Plaintiff's treatment history since January 2010.  (R. at 756.)  Dr. Brandemihl stated that "it is my medical opinion that [Plaintiff] suffers from pressured speech, tangentiality, poor insight and poor coping skills.  Upon observation she is emotionally labile, tearful and distractible.  She is anxious and dysphoric and continues to have nightmares and flashbacks."  (R. at 756.)

## B.  Other Hospital Treatment Records

On May 21, 2010, Plaintiff was admitted to the emergency department of Mount Carmel West in Columbus, Ohio, complaining of kidney stones.  (R. at 492.)  The examining physician, Marc Herdman, M.D., observed that Plaintiff's "mood and manner are appropriate.  Grooming and personal hygiene are appropriate."  (R. at 494.)

9

On January 16, 2012, Plaintiff was admitted to the emergency department at Doctors Hospital in Columbus, Ohio, complaining of symptoms associated with a urinary track infection ("UTI").  (R. at 443.)  The attending physician, Shawn Patterson, M.D., noted Plaintiff's history of anxiety and depression, but found she engaged in "[n]ormal interpersonal interactions with appropriate affect and demeanor."  (R. at 445.)

On October 30, 2012, Plaintiff was again admitted to the emergency department at Doctors Hospital in Columbus, Ohio, complaining of an upper respiratory infection ("URI").  (R. at 530.)  The attending physician, Marcus Topinka, M.D., found that Plaintiff exhibited "normal" mood and affect.  (R. at 532.)

On January 10, 2013, Plaintiff was admitted to the emergency department at Doctors Hospital in Columbus, Ohio, complaining of earache, headache, and back pain.  (R. at 563.)  The attending physician, Sherry Stevens, D.O., found that Plaintiff exhibited "normal" mood and affect.  (R. at 565.)

On January 18, 2013, Plaintiff was admitted to the emergency department at Doctors Hospital in Columbus, Ohio, complaining of earache.  (R. at 575.)  The attending physician, Pina Patel, M.D., found that plaintiff exhibited "normal" mood and affect.  (R. at 578.)

On February 6, 2013, Plaintiff was admitted to the emergency department at Doctors Hospital in Columbus, Ohio, complaining of "generalized weakness of 2 week duration associated with nausea and headache."  (R. at 587.)  Arin Piramzadian, D.O., examined Plaintiff and found that he exhibited "normal" mood, affect, and cognition.  (R. at 589.)

On February 11, 2013, Plaintiff was admitted to the emergency department at Doctors Hospital in Columbus, Ohio, complaining of URI symptoms and sinus congestion.  (R. at 598.)

The attending physician, Travis Ulmer, M.D., found that plaintiff exhibited "normal" mood and affect.  (R. at 600.)

On May 6, 2013, Plaintiff was admitted to the emergency department at Doctors Hospital in Columbus, Ohio, complaining of URI symptoms and cough.  (R. at 635.)  The attending physician, Pina Patel, M.D., found that plaintiff exhibited "normal" mood and affect.  (R. at 638.)

On May 15, 2013, Plaintiff was admitted to the emergency department at Doctors Hospital in Columbus, Ohio, complaining of a sore throat.  (R. at 647.)  Steven Nodine, D.O., examined Plaintiff and found that he exhibited "normal" mood, affect, and cognition.  (R. at 650.)

On July 22, 2013, Plaintiff was admitted to the emergency department at Doctors Hospital in Columbus, Ohio, complaining of abdominal pain and headache.  (R. at 671.)  Andre Kalnow, D.O., examined Plaintiff and found that he exhibited "normal" mood, affect, and cognition.  (R. at 650.)

On July 25, 2013, Plaintiff was admitted to the emergency department at Doctors Hospital in Columbus, Ohio, complaining of abdominal pain.  (R. at 694.)  Erin Robinson, D.O., examined Plaintiff and found that he exhibited "normal" mood, affect, and cognition.  (R. at 698.)

## C.  State Agency Evaluations

On May 11, 2011, upon review of Plaintiff's medical record, Mel Zwissler, Ph.D., a state-agency psychologist, assessed Plaintiff's mental condition.  In assessing Plaintiff's mental RFC, Dr. Zwissler opined that she is moderately restricted in her ability to carry out detailed instructions; moderately restricted in her ability to work in coordination on, with, or in proximity

to others without being distracted by them; moderately restricted in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; moderately restricted in her ability to interact appropriately with the general public; moderately restricted in her ability to accept instructions and respond appropriately to criticism from supervisors; and, moderately restricted in her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (R. at 55-56.) Dr. Zwissler also determined that Plaintiff "becomes overwhelmed easily and breaks down" but "[c]an carry out simple routine tasks to completion without strict time pressures." (R. at 56.) Dr. Zwissler further determined that Plaintiff "does not respond well to stressful situations or confrontation of any kind" but "[c]an interact in a setting with few, simple, and superficial interactions." (*Id*.) Dr. Zwissler also opined that Plaintiff is "unable to work with the public on a regular basis." (R. at 57.)

On August 29, 2011, Leslie Rudy, Ph.D., reviewed the record on reconsideration and essentially affirmed Dr. Zwissler's assessment. (R. at 72-78.)

## IV. ADMINISTRATIVE DECISION

On February 21, 2014, the ALJ issued his decision. (R. at 13-23.) The ALJ found that Plaintiff met the insured status requirements of the Social Security Act from her amended alleged onset date of January 1, 2010 through March 31, 2012. (R. at 16.) At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantially gainful activity

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?

since her alleged onset date through her last insured date. (*Id.*) The ALJ found that Plaintiff had

the severe impairments of "generalized anxiety disorder, panic disorder, and obsessive-

compulsive disorder." (*Id.*) He further found that Plaintiff did not have an impairment or

combination of impairments that met or medically equaled one of the listed impairments

described in 20 C.F.R. Part 404, Subpart P, Appendix 1, specifically comparing her impairments

against Listing 12.06 for anxiety-related disorders. (R. at 16-18.) At step four of the sequential

process, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that,
> through the date last insured, the claimant had the residual functional capacity to
> perform a full range of work at all exertional levels but with the following
> nonexertional limitations: the claimant retains the ability to understand, remember
> and carry out simple, repetitive tasks; able to maintain attention and concentration
> for two hour segments in an eight-hour workday; able to respond appropriately to
> supervisors and co-workers in a task-oriented setting where contact with others is
> casual and infrequent; and able to adapt to simple changes and avoid hazards in a
> setting without strict production demands.

(R. at 18.)

The ALJ gave Dr. Brandemihl's opinions "little weight" (*Id.*) The ALJ found Dr.

Brandemihl's opinions "quite conclusory, providing very little explaination of the evidence

relied on in forming those opinions." (*Id.*) The ALJ noted that "Dr. Brandemihl admitted that

his treatment notes do not reflect all of his observations of the claimant, which calls into question

---

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal
the criteria of an impairment set forth in the Commissioner's Listing of
Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant
perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual
functional capacity, can the claimant perform other work available in the national
economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009);
*Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

the bases of his opinions, which may be less reliable if he is relying upon his own memory."

(*Id*.)  With respect to Dr. Brandemihl's treatment plan, the ALJ also found as follows:

> [T]he course of treatment pursued by the doctor has not been consistent with what one would expect if the claimant were truly disabled, as it appears that he has merely refilled the claimant's medications without significant modifications to her treatment, which indicates that he felt her current treatment to be adequate in stabilizing her condition.

(*Id*.)

In contrast, the ALJ gave "great weight" to the state agency psychological consultants' mental assessments because "they are consistent with the medical evidence of record and there has been no significant change in the claimant's condition since the date of their determinations." (*Id*.)  Further, the ALJ gave "little weight" to Plaintiff's GAF ratings because "they are a subjective evaluation of the severity of the claimant's symptoms at [a] single point in time, and thus are not indicative of the claimant's level of functioning throughout the entire period at issue in this case."  (R. at 18-19.)

The ALJ observed that Plaintiff "appears to have underlying medically determinable impairments that could reasonably cause some symptomatology."  (R. at 19.)  The ALJ found, however, that "[t]he objective evidence fails to document the presence of any impairment or combination of impairments that could reasonably be expected to result in pain or other symptoms of such a severity or frequency as to preclude the range of work described above." (*Id*.)  The ALJ also found that Plaintiff's contradictory testimony "weigh[s] against [her] overall credibility."  (R. at 20.)  Specifically, the ALJ cited Plaintiff's reported statement that she left her job doing hair to take a different job, as well as Plaintiff's reported activities of daily living.  (*Id*.)

Relying on the VE's testimony, the ALJ concluded that Plaintiff cannot perform her past relevant work.  (R. at 21.)  The ALJ, again relying on the VE's testimony, determined that jobs existed in significant numbers in the national economy that Plaintiff could have performed, including hand packer, cleaner, and mail clerk.  (R. at 21-22.)  He therefore concluded that Plaintiff was not disabled under the Social Security Act.  (R. at 22.)

## V.  STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision

15

of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

In her Statement of Errors, Plaintiff asserts that the ALJ erred in his weighing of the medical opinions of record.  Specifically, Plaintiff asserts that the ALJ improperly declined to give controlling weight to Dr. Brandemihl's opinions concerning Plaintiff's mental health.  (ECF No. 14 at 11.)  She contends that that the ALJ failed to give "good reasons" for affording Dr. Brandemih's opinions little weight pursuant to 20 C.F.R. § 404.1527(c)(2).  (*Id.*)  Plaintiff also maintains that the ALJ erred in giving "great weight" to the state agency opinions.  (*Id.* at 14.)  Plaintiff argues that, at the time of the second administrative decision, these opinions were outdated and insufficient to support the ALJ's findings.  (*Id.*)  Finally, Plaintiff argues that the ALJ failed to obtain additional evidence regarding Plaintiff's impairments on remand and, therefore, improperly failed to comply with the mandate of the Appeals Council.  (*Id.* at 15.)

### A.  The Medical Opinion Evidence

The ALJ generally gives deference to the opinions of a treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . . ."  20 C.F.R. § 416.927(c)(2); *Blakley*, 581 F.3d at 408.  If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with

the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight."  20 C.F.R. § 404.1527(c)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors-namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source-in determining what weight to give the opinion.

*Id*.  Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion."  20 C.F.R. § 416.927(c)(2).  Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted).  The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied."  *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999).  The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544-45.  Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled."  *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 Fed. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).  There is no

17

requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision.  *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).  *Boseley v. Comm'r of Soc. Sec. Admin.*, 397 F. App'x 195, 199 (6th Cir. 2010) ("Neither the ALJ nor the Council is required to discuss each piece of data in its opinion, so long as they consider the evidence as a whole and reach a reasoned conclusion.")

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity.  20 C.F.R. § 404.1527(d).  Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance.  20 C.F.R. § 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

### 1.  Dr. Brandemihl's Medical Opinion

The ALJ considered Dr. Brandemihl's opinions with regard to Plaintiff's mental limitations, but assigned them little weight, reasoning as follows:

> The opinions of Adam Brandemihl, M.D., the clamant's treating psychiatrist, are given little weight, as the opinions expressed are quite conclusory, providing very little explaination of the evidence relied on in forming those opinions. . . .  In addition, the course of treatment pursued by the doctor has not been consistent with what one would expect if the claimant were truly disabled, as it appears that he has merely refilled the claimant's medications without significant modifications to her treatment, which indicates that he felt her current treatment to be adequate in stabilizing her condition.

(R. at 18.)

The Undersigned concludes that the ALJ offered good reasons for discounting Dr. Brandemihl's opinion and that the reasons are supported by substantial evidence.  The ALJ

18

reasonably discounted Dr. Brandemihl's opinion as conclusory.  *See* 20 C.F.R. § 404.1527(c)(3) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion.").  Indeed, the record that Dr. Brandemihl failed to provide any explanation of the evidence he used to support his conclusions.  As summarized above, Dr. Brandemihl's September 4, 2011 Medical Assessment of Psychiatric Limitations consists primarily of several pages of check-box forms and two sections with brief notes.  (R. at 390.)  Dr. Brandemihl found Plaintiff's work-related abilities to be mostly "fair" to "poor" and diagnosed her with generalized anxiety disorder, severe panic attacks, compulsive behavior, and excessive worrying.  (R. at 390-392.)  He also assessed Plaintiff to have a GAF score or 45.  (R. at 392.)  Dr. Brandemihl, however, did not discuss the objective medical evidence that led to his conclusions.  He pointed to no particular medical on clinical findings that support his opinion.  He failed to identify any testing, specific observations or symptoms.  These opinions are conclusory.  Failure to discuss the evidence upon which a medical opinion is based calls into question the opinion's supportability.  *See* 20 C.F.R. § 404.1527(c)(3) (identifying "supportability" as a relevant consideration).

The ALJ also reasonably concluded that the severity of the assessed limitations are not supported by Dr. Brandemihl's treatment records or evidence from the record.  In his January 21, 2013 letter reiterating his findings, Dr. Brandemihl noted diagnoses for panic disorder, generalized anxiety disorder, and obsessive compulsive disorder."  (R. at 522.)  Dr. Brandemihl did not provide any additional objective medical evidence supporting this functional assessment, and stated that "[d]ue to time constraints and my office practices/habit, my treatment notes do not reflect every single observation I make of [Plaintiff], every interaction with her, or even every opinion that I have about her level of functioning."  (*Id*.)  As the ALJ correctly noted, Dr.

19

Brandemihl's admission "calls into question the bases of his opinions, which may be less reliable if he is relying upon his own memory." (R. at 18.) The ALJ correctly called this statement into question, as these memories are in fact less reliable as evidenced by that fact that several of Dr. Brandemihl's findings are inconsistent with his treatment notes.

In his January 31, 2014 letter again reiterating his findings, Dr. Brandemihl stated that "it is my medical opinion that [Plaintiff] suffers from pressured speech, tangentiality, poor insight and poor coping skills. Upon observation she is emotionally labile, tearful and distractible. She is anxious and dysphoric and continues to have nightmares and flashbacks." (R. at 756.) A cursory examination of Dr. Brandemihl's treatment notes summarized above reveals that these findings, apart from "anxious aspect" do not appear in his mental status examinations and are in fact inconsistent with his treatment records which time and time again reflect that Plaintiff had fair insight and normal speech. Other providers also found Plaintiff's mental status as normal, exhibiting normal mood, affect and cognition. (*E.g.*, R. at 363-369, 373, 409-413, 727-731.)

Notably, Dr. Brandemihl's treatment notes consist primarily of notations of medication prescribed and diagnoses. His diagnoses, without more, do not require the conclusion that Plaintiff was disabled. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of [the condition] . . . says nothing about the severity of the condition." (citation omitted)). The ALJ, therefore, was correct to question the supportability of Dr. Brandemihl's January 31, 2014 opinion. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, *particularly medical signs and laboratory findings*, the more weight we will give that opinion." (emphasis added)).

As this review makes clear, the ALJ's evaluation of the medical opinions of Plaintiff's treating physician is supported by substantial evidence, as is his conclusion that Dr.

Brandemihl's opinions were conclusory and inconsistent with his treatment notes and other medical evidence of record.  In sum, the Undersigned finds that the ALJ did not err in his consideration and weighing of Dr. Brandemihl's opinions.

### 2.  The State Agency Opinions

The Undersigned concludes that the ALJ correctly determined that the state agency opinions were consistent with the objective evidence of record.  In his decision, the ALJ stated that "[t]he State Agency psychological consultants' mental assessment s are given great weight, as they are consistent with the medical evidence of record and there has been no significant change in the claimant's condition since the date of their determinations."  (R. at 18.)  Plaintiff challenges the ALJ's findings.  Specifically, Plaintiff argues that the state agency opinions are too outdated to support the ALJ's RFC and that the ALJ failed to identify what evidence in the record is "consistent" with the state agency opinions.  (ECF No. 14 at 17.)

The Undersigned finds Plaintiff's first critique of the ALJ's reliance upon the opinions of Drs. Waggoner and Goldsmith unavailing.  Social Security Ruling 96-6p, 1996 WL 374180 (July 2, 1996), states in pertinent part:

> In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.  For example, the opinion of the State agency medical or psychological consultant . . . .may be entitled to greater weight than a treating source's medical opinion if the State agency medical or psychological consultant's opinion is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source.

1996 WL 374180 at *3.  This language does not, however, require the conclusion that a state-agency opinion cannot be credited if it is not based on a review of the entire record where the ALJ has considered the subsequent medical evidence.  *See, e.g., McGrew v. Comm'r of Soc. Sec.*,

343 F. App'x 26, 32 (6th Cir. 2009) (ALJ did not improperly rely upon state-agency physicians'
opinions where they were out of date where it was clear ALJ considered the medical
examinations that occurred after the opinions were rendered and takes into account any changes);
*Ruby v. Colvin*, No. 2:13–CV–01254, 2015 WL 1000672, at *4 (S.D. Ohio Mar. 5, 2015) ("[S]o
long as an ALJ considers additional evidence occurring after a state agency physician's opinion,
he has not abused his discretion."); *cf. Hess v. Colvin*, No. 3:14-cv-401, 2015 WL 8381448, at *3
(S.D. Ohio Dec. 10, 2015) (noting that Social Security Ruling 96-6p "does not say that a
nontreating or nonexamining medical source's opinions are given more weight only when they
review a more complete record than the record before the treating source" and stating that
instead, "the completeness of the record is one of many factors used to weigh state-agency
source's opinions").

Here, the ALJ reviewed the additional evidence that was added to the record after the
state-agency physicians rendered their opinions, but concluded that there had been no significant
change in Plaintiff's condition since the date of the state agency consultant's determinations.
Despite Plaintiff's protests, she fails to identify any treatment notes or objective findings
reflecting that her condition had significantly worsened or that she had experienced any episodes
of decompensation subsequent to when Drs. Waggoner and Goldsmith rendered their opinions.
The Undersigned finds that substantial evidence supports the ALJ's determination that the record
does not reflect deterioration in Plaintiff's condition and the opinions are consistent with the
medical evidence of record, including Dr. Brandemihl's treatment notes. As summarized above,
Dr. Brandemihl found that Plaintiff exhibited fair or good insight, judgment, or impulse control
on the occasions that he conducted mental status exam. (R. at 364, 368, 373, 413, 731.)
Furthermore, on several occasions treating physicians examined Plaintiff and found her mood

and affect to be normal. (R. at 445, 494 532, 578, 589, 600, 638, 650, 698.) Moreover, these examinations occurred regularly from May 21, 2010 until July 25, 2013 indicating that the state agency opinions were not "outdated," but rather consistent with the entire record. (*Id.*) Despite Plaintiff's contrary arguments, then, the ALJ correctly determined that the state agency opinions were consistent with the objective evidence of record.

For the reasons explained above, therefore, the Undersigned finds no error with the ALJ's consideration and weighing of the medical opinion evidence in this matter and that his conclusions are supported by substantial evidence.

## B. The ALJ's Failure to Carry Out the Appeals Council's Instruction Upon Remand

Plaintiff next argues that ALJ erred in failing "to comply with the mandate of the Appeals Council, which on remand ordered that the ALJ obtain evidence from a medical expert, preferably a psychiatrist or psychologist, to clarify the nature, severity and limiting effects of the claimant's impairments." (ECF No. 14 at 15; R. at 109.) The Commissioner contends that this failure does not warrant remand because "the Court does not have jurisdiction to consider whether [the ALJ] complied with the Appeal Council's instructions on remand." (ECF No. 19 at 20.)

As this Court has concluded on this issue:

"[T]here is no consensus among federal courts regarding whether an ALJ's failure to follow Appeals Council directives in a remand order may serve as independent grounds for reversal absent other error." *Godbey v. Colvin*, No. 1:13–CV–00167, 2014 WL 4437647 at *5 (W.D. Ky. Sept. 9, 2014) (citing *Schults v. Colvin*, 1 F. Supp. 3d 712, 716 (E.D. Ky. 2014)). "Differing opinions exist not only between circuits, but also among courts within the Sixth Circuit, which has not considered this particular issue." *Schults*, 1 F. Supp. 3d at 716 (citing *Brown v. Comm'r of Soc. Sec.*, No. 1:08–CV–183, 2009 WL 465708 (W.D. Mich. Feb.24, 2009); *Salvati v. Astrue*, No. 3:08–CV–494, 2010 WL 546490 (E.D. Tenn. Feb.10, 2010)). Some courts consider an administrative law judge's failure to comply with directives of the Appeals Council to be a procedural error that can be so great as to deny the claimant fair process, *Godbey*, 2014 WL 4437647 at *6–7;

*Salvati*, 2010 WL 546490 at *4–8; others assume, without deciding, that such an error may serve as an independent ground for reversal. *Keating v. Comm'r of Soc. Sec.*, No. 3:13–CV–487, 2014 WL 1238611 at *15 (N.D. Ohio Mar.25, 2014); *Kearney v. Colvin*, 14 F. Supp. 3d 943, 950 (S.D. Ohio 2014); *Schults*, 1 F. Supp. 3d at 716. The overwhelming majority of courts in this circuit, however, have determined that federal courts lack jurisdiction to consider whether an administrative law judge complied with the Appeals Council's instructions on remand. *See O'day v. Comm'r of Soc. Sec.*, No. 1:13–CV–452, 2015 WL 225467 at *6 (W.D. Mich. Jan. 16, 2015); *Verschueren v. Comm'r of Soc. Sec.*, No. 1:13–CV–423, 2014 WL 4925866 at *10 (W.D. Mich. Sept. 30, 2014); *Caldwell v. Colvin*, No. CIV.A. 13–131, 2014 WL 3747548 at *3 (E.D. Ky. July 29, 2014); *Cooper v. Colvin*, No. 5:13–CV–00217, 2014 WL 2167651 at *2 (W.D. Ky. May 23, 2014) ("Plaintiff's contention that the ALJ's decision does not comply with the Remand Order is not cognizable in this judicial review."); *Prichard v. Astrue*, No. 2:080055, 2011 WL 794997 at *15 (M.D. Tenn. Feb.28, 2011) ("Plainly stated, this Court's scope of review 'is limited to an analysis of the ALJ's decision and not a review of the ALJ's compliance with the Appeals Council's Order of Remand.'"), report and recommendation adopted, 2011 WL 1113755 (M.D. Tenn. Mar. 25, 2011); *Peterson v. Comm'r of Soc. Sec.*, No. 09–11222, 2010 WL 420000 at *7 (E.D. Mich. Jan. 29, 2010) ("[S]ince 'the district court does not review internal agency-level proceedings, it will not address whether the ALJ complied with the specific provisions of the Appeals Council's order of remand.' "); *Dishman v. Astrue*, No. 4:08–CV–58, 2009 WL 2823653 at *11 (E.D. Tenn. Aug. 27, 2009); *Riddle v. Astrue*, No. 2:06–00004, 2009 WL 804056 at *19 (M.D. Tenn. Mar. 25, 2009); *Brown*, 2009 WL 465708 at *5 ("Plaintiff's appeal is inappropriate, because it seeks to have this court review an internal agency matter. . . . Nevertheless, the court concludes that it lacks jurisdiction to address plaintiff's claims."). This Court agrees that federal courts lack jurisdiction to consider whether an administrative law judge has complied with the Appeals Council's instructions on remand. (*Shope v. Comm'r of Soc. Sec.*, No. 2:14-CV-2055, 2015 WL 3823165 at *9 (S.D. Ohio June 19, 2015), report and recommendation adopted, 2015 WL 6155919 (S.D. Ohio Oct. 20, 2015).

*Shoppe v. Comm'r of Soc. Sec.*, No. 2:14-cv-2055, 2015 WL 3823165, *9 (S.D. Ohio June 29, 2015). The Undersigned agrees with and adopts this analysis.

When the Appeals Council denies a claimant's request for review, the decision of the administrative law judge becomes the final decision of the Commissioner. *Casey v. Secy. of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) (citing 20 C.F.R. § 404.955). The Court's review of the final decision of the Commissioner is confined to a review of the administrative law judge's decision and the evidence presented to the administrative law judge.

24

*Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003) (citing *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992)). "Whether an ALJ complies with an Appeals Council order of remand is an internal agency matter which arises prior to the issuance of the agency's final decision." *Brown*, 2009 WL 465708 at *6.

Here, the Appeals Council had an opportunity to review the ALJ's compliance with its directives upon appeal of ALJ Keller's decision. The Council however, did not remand the matter a second time. This Court has no authority to review the decision of the Appeals Council. *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Moreover, "Section 405(g) does not provide this court with authority to review intermediate agency decisions that occur during the administrative review process." *Brown*, 2009 WL 465708 at *6. The Undersigned concludes, therefore, that this Court lacks jurisdiction to consider whether the ALJ properly complied with the Appeals Council's instructions on remand.

## VII. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy.

Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date:  July 29, 2016                          ____/s/ Elizabeth A. Preston Deavers____
                                              ELIZABETH A. PRESTON DEAVERS
                                              UNITED STATES MAGISTRATE JUDGE